(December 12, 1908.)

STATE, Respondent, v. ALBERT H. SQUIRES, Appellant.

[98 Pac. 413.]

CRIMINAL LAW—SUFFICIENCY OF INFORMATION—EVIDENCE—ADMISSION OF DEPOSITION TAKEN AT INQUEST.

1. An information charging the defendant with the crime of murder and alleging that the defendant at a specified time and place, "then and there being, did then and there wilfully, unlawfully and feloniously, in a manner unknown, strike, beat, wound and ill-treat the body and person of Robert Clemm, a human being; by reason whereof the said Robert Clemm sickened and languished with mortal sickness and feebleness of body," etc., and thereafter died from such injuries within a year and a day, is a sufficient allegation of the means whereby the homicide was effected and the manner of the commission of the same.

2. The rule of liberal construction of indictments and information has been adopted in this state. *State* v. *Sly*, 11 Ida. 110, followed and approved.

3. As a general rule, depositions taken at a coroner's inquest, under the provisions of sec. 8382, Rev. Stat., are not admissible upon the trial of a person accused of having caused the death of the person over whose body the inquest was held.

4. Evidence in this case examined and held wholly insufficient to support the verdict and judgment or to justify the conviction of the defendant.

(Syllabus by the court.)

APPEAL from the District Court of the Second Judicial District, for the County of Latah. Hon. Edgar C. Steele, Judge.

Defendant was informed against and charged with the crime of murder. Upon the trial he was convicted of manslaughter and moved for a new trial, and thereafter appealed from the judgment and order denying his motion. *Reversed.*

Stewart S. Denning, and T. B. West, for Appellant.

The information does not state facts sufficient to constitute a public offense, nor does it conform substantially to the re-

quirements of secs. 5337, 5338 and 5339, Rev. Stat., as it does not show in what manner he came to his death. (*Commonwealth v. Webster*, 5 Cush. 295, 52 Am. Dec. 711; *State v. Owen*, 1 Murphy (N. C.), 452, 4 Am. Dec. 571; *White v. Commonwealth*, 6 Binn. 179, 6 Am. Dec. 443; 2 Bishop's New Crim. Proc., secs. 514-522.) Under the stipulation in this case, the court ought to have permitted us to introduce the deposition of Martin taken before the coroner's jury. (*Territory v. Evans*, 2 Ida. 651, 23 Pac. 232, 7 L. R. A. 646; *Mattox v. United States*, 156 U. S. 237, 15 Sup. Ct. 337, 39 L. ed. 409; *Chicago St. P. M. M. Co. v. Meyers*, 80 Fed. 361, 25 C. C. A. 486.) To justify conviction on circumstantial evidence, every fact necessary to the conclusion must be directly and independently proved by competent evidence, producing a moral certainty that the accused, beyond a reasonable doubt, and no one else, committed the offense. (*Commonwealth v. Webster*, 5 Cush. 295, 52 Am. Dec. 711; *State v. Seymour*, 10 Ida. 699, 712, 79 Pac. 825; *State v. Mason*, 4 Ida. 543, 43 Pac. 63; *State v. Crump*, 5 Ida. 166, 47 Pac. 814; *State v. Marquardsen*, 7 Ida. 352, 62 Pac. 1034; *State v. Levy*, 9 Ida. 483, 75 Pac. 227; *State v. Kruger*, 7 Ida. 178, 61 Pac. 463.)

J. J. Guheen, Attorney General, and B. S. Crow, for Respondent.

"The means of the commission of a homicide need not be charged under statutes requiring the indictment to contain a statement of the facts constituting the offense in plain and concise language." (*State v. Sly*, 11 Ida. 111-117, 80 Pac. 1125; Wharton on Homicide, 3d ed., p. 853; *Littell v. State*, 133 Ind. 577, 33 N. E. 417; *Freeze v. State*, 159 Ind. 597, 65 N. E. 915; *Mathis v. State*, 39 Tex. Cr. 549, 47 S. W. 464; *People v. Hong Ah Duck*, 61 Cal. 388.) "A coroner's inquest is an *ex parte* proceeding, at which neither the prosecution nor defense are represented. The lack of cross-examination as an element in coroner's procedure makes such testimony inadmissible." (2 Wigmore on Evidence, sec. 1374, and cases cited.)

AILSHIE, C. J.—The defendant was tried on the charge of murder, and was convicted of manslaughter and sentenced to serve a term of three years in the state penitentiary. He appealed from the judgment and an order denying his motion for a new trial, and that appeal was subsequently dismissed by this court. (*State v. Squires, ante,* p. 327, 97 Pac. 411.) He again appealed from the judgment and order. Counsel for the state moved to dismiss the appeal from the order denying the motion for a new trial and to strike the statement of the case from the record; but subsequent to the argument and submission of the case, the attorney general has withdrawn that motion.

Appellant assigns the action of the court in overruling his demurrer to the information as error. The principal objection made to this information is directed against the charging part thereof, wherein it is alleged that the defendant did "then and there, wilfully, unlawfully and feloniously in a manner unknown, strike, beat, wound and ill-treat the body and person of Robert Clemm, a human being; by reason whereof the said Robert Clemm sickened and languished with mortal sickness and feebleness of body," etc., and thereafter, within a year and a day, died from such injuries.

Appellant insists that in order to make the information good the prosecutor should have charged the instrument with which the wound was inflicted, or at least its general character and the nature of the injury that was inflicted thereby. We cannot sustain that contention. The rule of liberal construction of indictments and informations has been adopted in this state. (*State v. Sly,* 11 Ida. 110, 80 Pac. 1125.) Under that rule this information is sufficient. The acts charged as constituting the offense are stated in "ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." (Sec. 7677, Rev. Stat.) The defendant was in no respect misled as to his defense by the language used in the information.

It is next insisted by appellant that the court erred in refusing to admit the deposition of one L. B. Martin, which was taken at the coroner's inquest. Upon the trial it was ad-

mitted by the prosecuting attorney that the witness Martin was at that time absent from the state. Thereupon the defendant offered in evidence the deposition given by the witness at the coroner's inquest. The prosecuting attorney objected to its admission on the ground that it was incompetent, irrelevant and immaterial. The court sustained the objection and excluded the deposition. We think it must be admitted as a general rule that depositions taken under our statute on the holding of an inquest are not admissible upon the trial of a person accused of causing the death of the person over whose body the inquest was held. (2 Wigmore on Ev., sec. 1374; *State v. Grady,* 83 N. C. 643; *Sylvester v. State,* 71 Ala. 17; *Head v. State,* 40 Tex. Cr. 265, 50 S. W. 352.) On the other hand, they are admissible like any other admissions, statements or declarations of a party for the purposes of impeachment when the proper foundation is laid. (*State v. Corcoran,* 7 Ida. 220, 61 Pac. 1034; *Cox v. Royal Tribe,* 42 Or. 365, 95 Am. St. Rep. 772, note 4, 71 Pac. 73, 60 L. R. A. 620.) It has been held, however, in *State v. McNeil,* 33 La. Ann. 1332, that a deposition taken at a coroner's inquest is admissible on the part of the defense; that in such case the state has produced the witness and taken the deposition, and that the state consequently has no right to object to its use, and that the defendant may waive his right to be present and cross-examine the witness, and that an offer to introduce it in evidence is a waiver. (See, also, *Johnson v. State,* 26 Tex. App. 631, 10 S. W. 235; *United States v. Greene,* 146 Fed. 796; *Puls v. Grand Lodge,* 102 N. W. 165, 13 N. D. 559.)

Under the provisions of sec. 8382, Rev. Stat., the coroner is required to take the testimony of witnesses examined by him in writing. By sec. 8383 it is made the coroner's duty in the event any person has been arrested, charged with causing the death of the deceased, to transmit the depositions to the magistrate before whom the prisoner is held, and it is thereupon made the duty of the magistrate to transmit such depositions, along with the depositions taken in his court, to the clerk of the district court. The chief reason that exists for not allowing the introduction of depositions taken at the coroner's

inquest, is that the inquest is *ex parte,* and the parties to the subsequent litigation have not had the right and opportunity of being confronted by the witness and of cross-examination. This is the reason that is given in most every instance where such depositions have been rejected by the courts. We conclude that it was not error to reject this deposition.

The principal and real contention made by appellant in this case is that the evidence does not support the verdict and judgment, and that there is no evidence whatever in the case to justify a conviction. We are fully satisfied of the correctness of this contention. We have read and re-read the whole of the evidence, and nowhere find anything that would to our minds warrant a conviction of the defendant or that can be said to even constitute the slightest conflict of evidence on the question of his guilt. The evidence is entirely circumstantial, and is in no respect inconsistent with the innocence of the defendant; but, on the contrary, is entirely and wholly consistent with his innocence.

In *State v. Seymour,* 10 Ida. 712, 79 Pac. 825, in considering the sufficiency of the evidence, we said: "The undisputed evidence in this case is not only entirely consistent with defendant's innocence, but inconsistent with his guilt, and if the settled rules of law uniformly recognized in the trial of criminal cases are to be applied in this case, it becomes our duty to so declare and grant the defendant a new trial." That language is equally as applicable in the present case. In this case the defendant is a colored man. He owned and conducted a restaurant in the town of Troy at the time of the death of Clemm. Clemm was an habitual drunkard. During his sober periods he had been working for the defendant waiting on tables. The defendant had repeatedly befriended him, and when he was drunk would either send him home or take him to some place where he could lie down until he got sober. On the night of this occurrence, defendant went into his restaurant, after an absence for a short period, and found Clemm in a drunken stupor lying on one of the tables in a little room or box on one side of the dining-room. He also found two men and a dissolute woman there drinking and quarreling and using vile and obscene language. He ordered

one of the men out of the place, and aroused Clemm and told him to go home. He took Clemm to the door, and on being informed by the latter that he had left his coat, went back and got it and gave it to him and started him home. The defendant says that Clemm staggered and fell from one side of the walk to the other a couple times and finally got up and started on up the walk. It seems that Clemm went only about 60 ft. from the restaurant door and fell on the sidewalk, where he remained until morning. When found there the next morning he was in a deep stupor and unconscious. He was removed and medical treatment was had, but he was never aroused and did not recover consciousness. He died during the day. On an examination of the body of the deceased, several scratches or bruises were found over his limbs, and on one side of his head was a bruise swollen to half the size of an egg, and the blood vessel on the opposite side of the head was ruptured, and clotted blood was found inside the skull. The woman who had been in the restaurant the night before was found back of an adjoining building in a drunken or morphine stupor, and it was with difficulty that she was restored to consciousness. The two men who had been found in the restaurant were both drinking more or less on the next day, and one of them was absent from the state when this case was tried. No one testified or claimed that the defendant struck Clemm in the restaurant or when he took him to the door and started him home. It is clear that Clemm and the woman had too much whisky that night, and their condition on the following morning indicates that it must have been drugged. As to how Clemm received the wound on the head is in doubt, but it is not impossible or improbable that it was caused from a fall. On the other hand, it may have been caused by a blow administered by some one, though no motive is shown or attributed to anyone for giving him such a blow. It was shown on the trial that the defendant had always befriended Clemm even to the detriment of his business, and he proved by some of the leading business men of the town of Troy that he had always borne a good reputation for peace and quiet in the community. The fact

that the defendant is a colored man should not have militated against him.

The condition of the record in this case has caused the court much annoyance and unnecessary labor, and had the attorney general not withdrawn his motion, we would not, perhaps, under the statute and established rules of practice, have been able to grant the relief to which the defendant is clearly entitled.

The judgment in this case is reversed and a new trial is granted. In view of the fact that the defendant has now served in the county jail what would amount to at least half his sentence, and that the evidence which has been produced is insufficient to support a verdict and judgment against him, it is hereby advised that the district court, or judge thereof, make an order discharging the defendant, unless the prosecuting attorney, within thirty days after the going down of the *remittitur* in this case, makes a showing to the court, or judge thereof, that he has other and additional material evidence in the case that was not produced on the previous trial.

Sullivan, J., and Stewart, J., concur.